FILED
CLERK

8/28/2026

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

--------------------------------------------------------------------------X

GARY CHIECHI,

Plaintiff,

- against –

CATHOLIC HEALTH SERVICES OF LONG ISLAND,

Defendants.

--------------------------------------------------------------------------X

**MEMORANDUM OF DECISION & ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

23-CV-3118 (GRB)(SIL)

JASON DUNN,

Plaintiff,

- against –

CATHOLIC HEALTH SERVICES OF LONG ISLAND,

Defendants.

--------------------------------------------------------------------------X

24-CV-8192 (GRB)(SIL)

**GARY R. BROWN, United States District Judge**:

Presently before the Court are two actions brought by plaintiffs Gary Chiechi and Jason Dunn – both of whom were IT professionals in the same hospital system – raising various claims arising from their termination following their refusal to obtain a COVID-19 vaccination based upon unchallenged religious objections. The facts and issues in these cases, which are brought and defended by the same attorneys and lodged against the same defendant, are so very similar that joint resolution of the two pending motions for summary judgment in a single opinion appears appropriate. Indeed, the principal difference between the cases is procedural:

in the *Chiechi* case, a report and recommendation has been issued by Magistrate Judge Locke (attached hereto as Appendix A and incorporated by reference) (the "R&R"), while the *Dunn* matter has not been so reviewed. Yet the R&R, which is a careful, thorough decision typical of Judge Locke, proves helpful in resolving the *Dunn* matter as well. For the reasons that follow, Judge Locke's decision is adopted over the objections lodged by Chiechi, and summary judgment is therefore entered on behalf of defendant in that matter. For largely the same reasons, summary judgment is granted on Dunn's claims as well.

**FACTS**

The facts in the *Chiechi* matter are recited in significant detail in the R&R and need not be reiterated here. As to *Dunn*, the following material facts are undisputed, deemed admitted as a result of inadequate disputation and/or indisputable based on the records and evidence provided:

Defendant Catholic Health ("defendant") operates an integrated network of healthcare facilities located on Long Island and, as such, is subject to oversight by the New York State Health Department. DE 24-8 at 1-2. As part of their operations, these facilities maintain "extensive wired and wireless IT networks," and "depend on the continuous availability of these IT networks to provide necessary medical services to patients," while defendant "employs a team of network engineers to ensure the continuous availability of these IT networks." *Id.* at 3. Defendant asserts that by "using an on-call schedule and other techniques, [it] ensures that there are network engineers available around-the-clock to detect and restore any disruption to the IT networks." *Id.* at 4. Dunn fails to effectively dispute these assertions.

Dunn began as a network engineer in March 2010 "responsible for monitoring and maintaining the wired and wireless IT networks that Defendant's hospitals and other healthcare

facilities (such as nursing homes, ambulatory surgery centers, clinics, and physician offices) rely upon to deliver medical and related services to patients." *Id.* at 4-5. While these duties could often be discharged remotely, at his deposition, Dunn testified under oath that he regularly was on call, prepared to work in person at a facility and ultimately admitted that there were at least a few occasions when he was onsite at a facility to make necessary repairs. DE 24-5 at 53-56. Though seemingly reluctant to say so, Dunn ultimately acknowledged that, at times, he had to go onsite at Catholic Health when he was on call. *Id.* at 48-52.

In a declaration submitted with this motion, Dunn stated that it had been "over a decade" since he was required to do so and added, inconsistent with his sworn statements both at his deposition and in other portions of the declaration, that "[he] was never required to go on-site." DE 24-9. Throughout his 56.1 statement and counsel's briefing, plaintiff repeatedly asserts that "99.9% of the repairs could have been done remotely," though there is *no* evidence submitted to support this figure. *See, e.g.* DE 24-8 at 9.

Thus, Dunn fails to provide any competent evidence to rebut defendant's well-supported assertion that it was "an essential function of Plaintiff's position as a senior network engineer [ ] to come on site at Defendant's hospital and health care facilities at any time of day or night, to check and repair network equipment and access points." *Id.* ¶ 43; *cf.* DE 24-2 ¶ 20; DE 24-3 ¶ 10. Similarly, Dunn fails to effectively dispute the assertion, which is again supported in the record, that he "was not able to perform the essential functions of his position as a senior network engineer by working fully remote." DE 24-8 ¶ 43.

On August 26, 2021, the N.Y.S. Department of Health issued a COVID-19 vaccine mandate applicable to defendant's facilities, requiring its personnel to receive vaccines against the disease. DE 24-8 at 9-10. Defendant notified Dunn that he needed to become fully

vaccinated against COVID-19 by September 27, 2021 or face termination of his employment. *Id.* at 11. The deadline was extended several times, but Dunn never obtained the vaccination. *Id.* at 14. He sought an exemption from the mandate (which could not be granted) and may have made a request for some kind of accommodation, but the details of that accommodation request have not been submitted. He was terminated, effective December 7, 2021, for failure to comply with the vaccine mandate. *Id.* at 15.

**DISCUSSION**

*Applicable Legal Standards*

These motions for summary judgment are decided under the oft-repeated and well-understood standard of review for these matters, as discussed in *Bartels v. Inc. Vill. of Lloyd Harbor*, 97 F. Supp. 3d 198, 211-12 (E.D.N.Y. 2015), *aff'd*, 643 F. App'x 54 (2d Cir. 2016), which discussion is incorporated by reference herein. In sum, the question before the Court is whether, based upon the undisputed or improperly disputed facts, the plaintiffs are entitled to partial summary judgment. Moreover, as this Court has previously held:

> [T]o oppose a motion for summary judgment, a party is required by the Court's Local Rules to submit a Statement of Material Facts upon which it contends there "exists a genuine issue to be tried" and "each statement controverting any statement of material fact ... must be followed by citation to evidence which would be admissible, set forth as required by Fed. R. Civ. P. 56(c)." L. Civ. R. 56(d); *Tuccio v. FJC Sec. Servs., Inc.,* No. CV 12-5506(JFB)(GRB), 2014 WL 4438084, at *5 (E.D.N.Y. Aug. 18, 2014), adopted by, 2014 WL 4438469 (E.D.N.Y. Sept. 8, 2014), appeal dismissed, (2d Cir. Mar. 18, 2015). A party may not rest on a mere denial without citing supporting admissible evidence. "Merely denying certain statements in the moving party's statement of undisputed material facts without stating the factual basis for such denial and without disclosing where in the record is the evidence relied upon in making such denial does not constitute a 'separate, short, and concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried'—as is required to controvert the moving party's statement of undisputed material facts." *Covelli v. Nat'l Fuel Gas Distrib. Corp.,* 2001 WL 1823584, at *1 (W.D.N.Y. Dec. 6, 2001) (*citing Holtz v. Rockefeller & Co*., 258 F.3d 62, 74 (2d Cir. 2001) ), *aff'd, Covelli v. Nat'l Gas Distrib. Corp.,* 49 F. App'x 356 (2d Cir. 2002).

> Upon the failure to properly controvert a movant's statement of material fact, such statement "will be deemed admitted for the purposes of the motion." L. Civ. R. 56.1(c); *D.N. ex rel. D.N. v. Bd. of Educ. of Ctr. Moriches Union Free Sch. Dist.,* No. CV 14-99(GRB), 2015 WL 5822226, at *3 n.3 (E.D.N.Y. Sept. 28, 2015); *see also Edmonds v. Seavey,* No. 08 CIV. 5646 (HB), 2009 WL 2949757, at *1 n.2 (S.D.N.Y. Sept. 15, 2009), *aff'd,* 379 F. App'x 62 (2d Cir. 2010); *AFL Fresh & Frozen Fruits & Vegetables, Inc. v. De-Mar Food Servs. Inc.,* No. 06 Civ. 2142(GEL), 2007 WL 4302514, at *5 (S.D.N.Y. Dec. 7, 2007). Again, district courts have "broad discretion to determine whether to overlook a party's failure to comply with local court rules," *Holtz,* 258 F.3d at 73, and the Court may not rely solely upon the failure to controvert assertions made in a Rule 56.1 statement if those assertions are not supported in the record. *See Giannullo,* 322 F.3d at 140 ("[E]ven though plaintiff's Rule 56.1 counter-statement failed to specifically controvert these assertions, the unsupported assertions must nonetheless be disregarded and the record independently reviewed."); *but see Jackson v. Fed. Express,* 766 F.3d 189, 196 (2d Cir. 2014) (distinguishing *Giannullo* and upholding default where "each statement of proposed undisputed facts was supported by a citation to the record sufficient to prove each such fact").

*Davis v. Town of Hempstead*, 2019 WL 235644, at *3 (E.D.N.Y. 2019).

*Chiechi*

In reviewing the R&R in the *Chiechi* matter, the district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where a party makes specific and timely objections to a Magistrate Judge's findings or recommendations as to dispositive motions, the district court must apply a *de novo* standard of review to the portions of the R&R to which the objection is made. Fed. R. Civ. P. 72(b); *see LLC v. Doe 3*, 604 F.3d 110, 116 (2d Cir. 2010); *see also* 28 U.S.C. § 636(b)(1). However, "general or conclusory objections, or objections which merely recite the same arguments presented to the magistrate judge, are reviewed for clear error." *Killoran v. Westhampton Beach Sch. Dist*., 2021 WL 665277, at *1 (E.D.N.Y. 2021) (quoting *Caldarola v. Town of Smithtown,* U.S. Dist. LEXIS 37280, at *1 (E.D.N.Y. Apr. 4, 2011)).

Chiechi's objections to the R&R seem to rest largely upon selective presentation and/or mischaracterization of Chiechi's deposition testimony. As Judge Locke properly determined,

Chiechi acknowledged that some part of his job responsibilities involved going into the hospital facilities. During his deposition, Chiechi testified as follows:

Q: Did part of your job include going onsite at hospitals?

A: A very slim part of my job, yes.

DE 35-2 at 45. Counsel's repeated insistence, often in capitalized letters, that plaintiff "WAS NOT REQUIRED TO GO [sic] THE HOSPITAL," simply misstates the evidence of record. DE 37 at 5. In other instances, counsel provides alleged quotations from the deposition transcript which simply do not exist, e.g. "'Plaintiff was never required to enter a hospital.'" DE 37 at 4 and 8 (attributing said quotation to Tr. 44:12-18).

Thus, Chiechi's conclusory objection suggesting that the Court should not grant summary judgment not only fails clear error review, but also *de novo* review. His remaining objection – suggesting that the NYSHRL offers a more favorable standard of review than Title VII – even if correct, does not change the outcome here.

*Dunn*

Crucial to the analysis of both cases is the so-called "sham affidavit doctrine" which prohibits the creation of an issue of fact via the submission of a declaration or affidavit that contradicts a party's sworn deposition testimony. *In re Fosamax Prods. Liab. Litig.*, 707 F.3d 189, 193 (2d Cir. 2013) ("the 'sham issue of fact' doctrine [ ] prohibits a party from defeating summary judgment simply by submitting an affidavit that contradicts the party's previous sworn testimony."). Here, both plaintiffs submitted sworn statements, which to some degree contradict their deposition testimony, endeavoring to create issues of fact. As Judge Locke set forth in the R&R:

> To the extent Chiechi's declaration submitted in opposition contradicts his deposition testimony, the Court rejects it. *See Jeffreys v. City of New York*, 426

> F.3d 549, 554-55 (2d Cir. 2005); *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (finding that a party may not manufacture a genuine material dispute by submitting a declaration that contradicts prior sworn testimony without explanation).

*Chiechi*, DE 36 at 18. To the extent Dunn similarly relies on issues of fact conjured from a declaration that contradicts his prior testimony, the Court hereby rejects it.

Indeed, the sham affidavit doctrine and the concomitant determination rejecting this effort defeats much of the argument raised by counsel on the summary judgment motion in *Dunn*. Most of those arguments are predicated on factual assertions that misstate the record. *See, e.g.,* DE 24-11 at 23 (incorrectly asserting that "Plaintiff's testimony has demonstrated that all the essential duties of his position were performed outside a hospital and could be done from home or an office building."). Furthermore, in an argument unopposed (and thus effectively abandoned) by plaintiff's counsel, defendant asserts that failing to obtain a vaccine rendered plaintiff unqualified for his position. DE 24-13 at 6 (citing *Brown v. S. Shore Univ. Hosp.,* 762 F. Supp. 3d 191, 207 (E.D.N.Y. 2025) (where a hospital imposed a COVID-19 vaccination requirement as an employment requirement and an employee failed to comply with that requirement, the employee was not qualified for their position for purposes of bringing a Title VII employment discrimination claim.)).

As found by Judge Locke in connection with *Chiechi*, the undisputed facts here similarly cannot support Dunn's failure to accommodate claims under Title VII and the NYSHRL. Even assuming there had not been a catastrophic technological failure during plaintiffs' tenures that would require their onsite assistance, it was reasonable for defendant to require that plaintiffs remained available to respond onsite in the future if necessary. *See Barbour v. Northwell Health*, No. 22-CV-06409 (SJB) (ARL), 2025 WL 3640551 at *5 (E.D.N.Y. Dec. 16, 2025) (finding that remote work would not be a reasonable accommodation

because "it would have forced [the defendant] to hire another employee to perform the [essential] duties, which is an undue hardship.").

As to his disparate treatment claim, the conclusory, post-deposition evidence set forth by plaintiff names a single employee without any description of his duties and responsibilities. DE 24-9, ¶ 12. Such conclusory assertions, which fail to identify whether the cited comparator employees were similarly situated, at this late juncture cannot support Dunn's disparate treatment claim.[1]

Finally, plaintiff rests on defendant's undisputed failure to engage in an interactive process under the NYSHRL to explore potential accommodations prior to his termination. DE 24-11 at 13. The cases upon which plaintiff predicates his argument consist of three non-binding lower court orders, two of which are unpublished. *Id.* The only published order cited is bereft of facts, but finds, in the context of an Article 78 proceeding, a violation of the New York *City* Human Rights Law for failing to engage in "cooperative dialogue" with plaintiff. *Vasquez v. New York City Fire Dept.*, No. 533122/2022, 2023 WL 3681674, at *1 (N.Y. Sup. Ct. May 10, 2023). Even that determination, which is largely inapposite here, requires that the plaintiff request a reasonable accommodation, which would have to be granted only if such accommodation were "possible." *Id.* Moreover, in a subsequent federal case brought by the same plaintiff, Judge Gonzalez found that the failure to engage in such an interactive process, standing alone, was insufficient to establish liability under Title VII. *Vasquez v. City of New York,* No. 22-CV-05068 (HG), 2025 WL 1560105, at *4 (E.D.N.Y. June 2, 2025), reconsideration denied, No. 22-CV-05068 (HG), 2025 WL 1697011 (E.D.N.Y. June 17, 2025)

---

[1] For the same reasons, plaintiff's attempt to posit this evidence in further support of his discrimination claims fails. DE 24-11 at 11 (arguing that Pearce was "a member of Plaintiff's team," which contradicts the undisputed evidence).

("he does not explain how any procedural failure, such as not 'engag[ing] in any cooperative dialogue or individualized assessment,' necessarily means that his proposed accommodations would not have imposed an undue hardship on Defendant.").

While defendant's failure to engage in the interactive process is less than ideal, given the undisputed fact that onsite work in a hospital setting was an essential function of Dunn's position, defendant's failure to engage in an interactive process cannot be seen as a material fact precluding entry of summary judgment. *See* R&R, DE 36, n.1 ("such failure to engage does not in and of itself impact the resolution of Chiechi's claims."). Ultimately, any such process would have been an exercise in futility, as "an employer is not required to create a new or fundamentally different position to accommodate an employee's beliefs." *Greene v. Northwell Health Inc.*, No. 2:23-CV-4846(NJC)(LGD), 2024 WL 4287875, at *17 (E.D.N.Y. Sept. 25, 2024); *see also D'Cunha v. Northwell Health Sys.*, 2023 WL 7986441, at *2-3 (2d Cir. Nov. 17, 2023) (citing *We The Patriots USA, Inc. v. Hochul,* 17 F.4th 266, 292 (2d Cir.)).

**CONCLUSION**

In the *Chiechi* matter, the Court has conducted a *de novo* review of the R&R and finds the determination sound in all material respects. For largely the same reasons, in the *Dunn* case, the Court finds that there are no material issues of disputed fact, and defendant is entitled to summary judgment. Thus, the R&R is therefore adopted, and summary judgment is entered on behalf of defendant in both matters.

**SO ORDERED.**

Dated: Central Islip, New York
August 28, 2026

/s/ Gary R. Brown
GARY R. BROWN
United States District Judge

# Appendix A:

# Report & Recommendation of the Honorable Steven Locke

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X

GARY CHIECHI,

Plaintiff,

- against -

CATHOLIC HEALTH SERVICES OF LONG ISLAND,

Defendant.

-----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
23-CV-3118 (GRB)(SIL)

**STEVEN I. LOCKE, United States Magistrate Judge:**

Presently before the Court in this employment discrimination action, on referral from the Honorable Gary Brown, is Defendant Catholic Health Services of Long Island's ("Defendant" or "Catholic Health") motion for summary judgment. *See* Notice of Motion for Summary Judgment ("Def.'s Mot."), Docket Entry ("DE") [35]; Defendant's Memorandum of Law in Support of Motion for Summary Judgment ("Def.'s Mem."), DE [35-5]. Plaintiff Gary Chiechi ("Plaintiff" or "Chiechi") opposes this motion. *See* Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Pl.'s Opp."), DE [35-11].

By way of Complaint filed December 27, 2022, and Amended Complaint dated November 28, 2023 ("Am. Compl."), Chiechi commenced this action against Catholic Health alleging violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the New York Human Rights Law ("NYSHRL"), N.Y. Exec. Law § 296 *et seq.*, arising from the termination of his employment after he refused to

receive a COVID-19 vaccination. *See* Am. Compl., DE [18]. He asserts two causes of action: (1) disparate treatment based on religion under Title VII, and (2) failure to provide a reasonable accommodation for his sincerely held religious beliefs under both statutes.

Catholic Health moves for summary judgment on both claims, arguing that: (i) Chiechi was not qualified for his position because he declined to comply with a valid employment requirement (*i.e.*, the New York State Department of Health's COVID-19 Vaccine Mandate); and (ii) accommodating his religious beliefs would have imposed an undue hardship. For the reasons set forth below, the Court recommends that Defendant's motion for summary judgment be GRANTED in its entirety.

## I. BACKGROUND

### A. Relevant Facts

The following facts are taken from the parties' pleadings, declarations, exhibits, and respective Fed. R. Civ. P. 56.1 statements. Except where indicated, these facts are undisputed.

#### 1. The Parties

Catholic Health is a New York not-for-profit corporation serving as the coordinating body of an integrated network of healthcare providers – including multiple hospitals – in Nassau and Suffolk Counties, Long Island. Defendant's Rule 56.1 Statement ("Def. 56.1"), DE [35-6], ¶¶ 1-2; Plaintiff's Response to Defendants' Statement Pursuant to Local Rule 56.1 and Counterstatement of Material Issues for Trial ("Pl. 56.1"), DE [35-10], ¶¶ 1-2. Catholic Health and its facilities are subject to

the oversight of the New York State Department of Health. Def. 56.1 ¶ 4. Plaintiff Gary Chiechi was employed as a Senior Data Protection Administrator by CHS Services, Inc., a subsidiary of Catholic Health, until December 9, 2021. *Id.* at ¶¶ 11-13; Pl. 56.1 ¶¶ 11-13.

2. Catholic Health's Data Infrastructure

As a multi-hospital healthcare system, Catholic Health obtains, processes, and must protect substantial amounts of electronic data, including clinical, operational, and financial data. Def. 56.1 ¶ 5. The protection of that data is, in Catholic Health's view, essential to its ability to deliver patient care. *Id.* at ¶ 6. A key component of that effort is a network of data servers and hard drives housed in data rooms throughout its hospitals and facilities. *Id.* at ¶ 7. Catholic Health contends that the maintenance and repair of that hardware is an essential operational function, because equipment failure risks loss of, or permanent damage to, critical data. *Id.* at ¶ 8.

To maintain continuous data access, Catholic Health employs a team of data protection administrators responsible for keeping data servers and hard drives in working order and making necessary hardware repairs. *Id.* at ¶ 9. Using an on-call schedule and escalation protocols, Catholic Health ensures around-the-clock availability to detect, repair and restore any disruptions to data access and to maintain backup systems including tape drives, tape libraries, and backup media servers. *Id.* at ¶ 10.

3. Chiechi's Job Duties

Chiechi held various IT roles at Catholic Health beginning in 2000. From 2000 through 2003, he worked as a Windows Intel server administrator. *Id.* at ¶ 12. He served as a data protection administrator from 2003 through 2006, and again from 2010 through 2017. *Id.* at ¶ 11. In 2017, Catholic Health promoted him to Senior Data Protection Administrator. *Id.* at ¶ 13; Chiechi Deposition Transcript ("Chiechi Dep. Tr.") at 35:22 – 36:23.

Chiechi's primary responsibilities involved maintaining and repairing data servers, hard drives, and backup systems that store clinical, operational, and financial data critical to Catholic Health's hospital operations. Chiechi Dep. Tr. at 36:2-23. While much of Chiechi's work could be performed remotely, the parties dispute the requirements for periodic on-site visits to data rooms located within Catholic Health's hospital facilities.

Catholic Health contends that while a substantial portion of Chiechi's work could be handled remotely, there were recurring occasions when he was required to go on-site at Catholic Health hospitals and healthcare facilities to check and repair data protection systems. Def. 56.1 ¶ 14; Declaration of Sanjay Marnikarnika ("Marnikarnika Decl."), DE [30-3], ¶ 7; Chiechi Dep. Tr. at 44:7 – 47:12. Specifically, Catholic Health states: (i) third-party vendors were engaged to repair and replace faulty hardware, but only after Catholic Health's own staff first diagnosed the problem, a process that often required on-site presence, Def. 56.1 ¶ 16, Marnikarnika Decl. ¶ 8; (ii) for sensitive or critical data storage components, Catholic Health relied

exclusively on its own data protection administrators rather than outside vendors, given the critical nature of those systems, *Id.*; (iii) certain hardware failures required immediate response that could not await vendor dispatch, so Catholic Health relied on Chiechi and others for urgent on-site repairs, Def. 56.1 ¶ 17, Marnikarnika Decl. ¶ 9; and (iv) an around-the-clock on-call schedule was maintained for all data protection administrators for this purpose. Def. 56.1 ¶ 18, Marnikarnika Decl. ¶ 10.

Chiechi acknowledged in his deposition that he personally visited Catholic Health hospital facilities an average of twelve times per year in the years leading up to the pandemic, Chiechi Dep. Tr. at 45:24 – 46:6, 53:24 – 54:8, 62:22 – 65:18, and that those visits continued into the pandemic period. *Id.* at 57:10 – 61:22. He further acknowledged that the data room at one of the Catholic Health hospitals is in the basement in close proximity to the hospital's cafeteria, pharmacy, and radiology unit. Def. 56.1 ¶ 20; Chiechi Dep. Tr. at 52:13 – 53:19. Catholic Health contends that Chiechi and other administrators frequently encountered clinical personnel and, on occasion, patients, when traveling to and from these data rooms through hospital corridors. Def. 56.1 ¶ 19; Marnikarnika Decl. ¶ 11; Chiechi Dep. Tr. at 49:18 – 57:6.

In his subsequent self-serving declaration, Chiechi states that he was never required to go on-site to diagnose hardware issues, because all diagnostic procedures were performed remotely by running diagnostic tools and collecting logs that were then submitted to third-party vendors for analysis. Pl. 56.1 ¶¶ 14-16; Declaration of Gary Chiechi ("Chiechi Decl."), DE [35-9], ¶¶ 8-11, 19. He contends that third-party vendors were responsible for all on-site hardware replacements and repairs, Pl. 56.1

¶ 19, Chiechi Decl. ¶¶ 15-17, and that during on-call shifts he responded to repair requests and backup failures entirely from his remote "home office." Pl. 56.1 ¶¶ 10, 15-18; Chiechi Decl. ¶¶ 12-14. He further states that hardware failures handled during on-call hours were limited to the master backup server located at the Melville, New York IT office—a non-hospital, non-covered facility—and that he never entered a hospital to perform the essential duties of his position. Pl. 56.1 ¶¶ 14-17; Chiechi Decl. ¶¶ 12-14.

Without any evidentiary support, Chiechi also identifies two other employees on related teams who purportedly were granted remote work arrangements. Pl. Opp. at 7; Pl. 56.1, Additional Undisputed Facts ¶2; Chiechi Dep. Tr. at 129:21—130:10.

4. <u>New York's Emergency Vaccine Mandate</u>

Effective August 26, 2021, the New York State Commissioner of Health enacted an emergency regulation, codified at N.Y. Comp. Codes R. & Regs. tit. 10, §2.61 (the "Vaccine Mandate", "Section 2.61", "§2.61"), requiring covered healthcare facilities to ensure that any covered personnel who could potentially expose staff, patients, or residents to COVID-19 be vaccinated against the disease. Def. 56.1 ¶ 21; Declaration of Donna Abrusci ("Abrusci Decl."), DE [30-2], ¶ 7. Catholic Health and its hospitals, nursing homes, and other facilities were covered entities under the Vaccine Mandate. Def. 56.1 ¶22; Abrusci Decl. ¶ 8. Section 2.61 provided for certain medical exemptions from the vaccination requirement for "personnel" for whom "immunization with COVID-19 vaccine is detrimental to [their] health . . . , based upon a pre-existing health condition" as more specifically defined and limited by the

Rule. N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61(d)(1). Notably, Section 2.61 did not contain an "exemption" for "personnel who oppose vaccination on religious or any other grounds not covered by the medical exemption." *We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 275 (2d Cir.), *opinion clarified,* 17 F.4th 368 (2d Cir. 2021). Section 2.61 did not prohibit employers from providing these employees "with a reasonable accommodation that removes the individual from the scope of the Rule." *Id.* at 370.

5. <u>Plaintiff's Accommodation Requests and Termination</u>

Catholic Health determined that Plaintiff, by virtue of his required on-site hospital visits, fell within the definition of "personnel" covered by the Vaccine Mandate. Catholic Health notified Chiechi that he was required to be vaccinated by September 27, 2021 to remain employed. Def. 56.1 ¶¶ 24-26; Abrusci Decl. ¶¶ 9-12; Chiechi Dep. Tr. at 67:3-18. Chiechi refused vaccination and submitted both a religious and a medical exemption request. Def. 56.1 ¶¶ 30-32; Chiechi Dep. Tr. at 67:9 – 69:8, 70:9-18. Catholic Health denied the religious exemption request because the Vaccine Mandate did not permit such exemptions. Def. 56.1 ¶33. It denied the medical request because Chiechi never submitted supporting documentation from a physician or clinician. *Id.* at ¶¶ 30-31; Chiechi Dep. Tr. at 30:6-18; 71:10-14. Catholic Health determined that because an essential function of Chiechi's position required on-site access to its hospital facilities, he could not be removed from covered personnel status, and therefore his proposed accommodations were not feasible. Def. 56.1 ¶ 37; Abrusci Decl. ¶ 18; Marnikarnika Decl. ¶ 14. Catholic Health terminated Chiechi's

employment effective December 9, 2021. Def. 56.1 ¶ 35; Abrusci Decl. ¶ 16; Marnikarnika Decl. ¶ 15; Chiechi Dep. Tr. at 97:5 – 98:6.

It is undisputed that Catholic Health did not engage in any interactive process with Chiechi to discuss possible accommodations or alternatives before denying his request and terminating his employment. Pl. 56.1 Additional Undisputed Facts ¶ 1; Chiechi Dep. Tr. at 126:8-14. It is also undisputed that Catholic Health did not question the sincerity of Chiechi's religious beliefs. Pl. 56.1 Additional Undisputed Facts ¶ 3; Chiechi Dep. Tr. at 128:7-10.

**B. Procedural History**

Based on the above, Plaintiff filed a timely charge with the Equal Opportunity Employment Commission ("EEOC"), and the EEOC issued a Right to Sue Letter on September 30, 2022. Am. Compl. ¶ 12.

Chiechi then commenced this action by Complaint filed December 27, 2022, and Amended Complaint dated November 28, 2023, alleging two causes of action under Title VII and the NYSHRL, arising from the termination of his employment after he refused to receive a COVID-19 vaccination. He asserts two theories of liability: (1) disparate treatment based on religion under Title VII, and (2) failure to provide a reasonable accommodation for his sincerely held religious beliefs under both statutes. *See generally* Am. Compl.

Defendant filed an Answer on December 22, 2023. DE [20]. After discovery closed, Defendant served its motion for summary judgment on August 8, 2025, seeking to dismiss all of Plaintiff's claims. *See* Def.'s Mem. Plaintiff opposes. *See* Pl.

Opp. Judge Brown referred all dispositive pre-trial motions to this Court on August 22, 2023 for report and recommendation. For the reasons set forth below, the Court recommends granting Defendant's motion in its entirety.

## II. LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005). In deciding a motion for summary judgment, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S. Ct. 1348, 1356 (1986) (internal

quotation omitted); *see also Maxton v. Underwriter Lab'ys, Inc.*, 4 F. Supp. 3d 534, 542 (E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party.").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see Artis v. Valls*, No. 9:10-CV-0427 GTS/TWD, 2012 WL 4380921, at *6 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

## III. DISCUSSION

Applying the standards outlined above, and for the reasons set forth below, the Court recommends granting Defendant's' motion in its entirety.

### A. Title VII Claims

Initially, Chiechi brings claims pursuant to Title VII for religious discrimination based on disparate treatment and failure to reasonably accommodate. *See generally* Am. Compl.

Title VII "aims to remedy discrimination in the workplace on the basis of race, color, religion, sex or national origin . . . ." *Harrison v. Potter*, 323 F. Supp. 2d 593, 599 (S.D.N.Y. 2004). The statute provides, in relevant part:

> It shall be an unlawful employment practice for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation,

> terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2(a).

A Title VII claim is analyzed under the burden-shifting framework of *McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817. Under this framework, a plaintiff has the initial burden to establish a *prima facie* case of discrimination. *Id.* at 802. A plaintiff can establish a *prima facie* case by alleging that: "(1) he belonged to a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances giving rise to [an] inference of discrimination." *See Bentley-Ammonds v. Northwell Health, Inc.*, No. 21-835-CV, 2022 WL 893716, at *1 (2d Cir. Mar. 28, 2022).

Once an employee establishes a *prima facie* case, the burden shifts to the employer to "proffer a legitimate non-discriminatory reason for its actions . . . ." *Chen v. Stony Brook Univ. Advancement*, No. 20-4250, 2022 WL 289317, at *1 (2d Cir. Feb. 1, 2022) (quoting *Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 251 (2d Cir. 2014)). An employer may be held liable under Title VII for failing "to accommodate the religious practice of their employees unless doing so would impose an undue hardship on the conduct of the employer's business." *Groff v. DeJoy*, 600 U.S. 447, 453–54, 143 S. Ct. 2279 (2023) (citing 42 U.S.C. § 2000e(j)); *Hale v. Vidal*, No. 22-2973, 2023 WL 7211909, at *2 (2d Cir. Nov. 2, 2023) (citing *Baker v. The Home Depot*, 445 F.3d 541, 546 (2d Cir. 2006)). Then, if this threshold is met, the plaintiff must assert facts

"establish[ing] that the defendant's reason is in fact pretext for unlawful discrimination." *Id.*

1. Title VII: Disparate Treatment Claim

Plaintiff's Title VII disparate treatment claim fails on two independent grounds.

First, the claim is abandoned. Catholic Health's moving papers argued that Chiechi cannot establish a *prima facie* case of disparate treatment because he was not qualified for his position once the Vaccine Mandate took effect. Chiechi's opposition papers contain no response to this argument. Claims not addressed in opposition to a summary judgment motion are deemed abandoned. *See Jackson v. Fed. Express*, 766 F.3d 189, 195 (2d Cir. 2024); *Brown v. S. Shore Univ. Hosp.*, 762 F. Supp. 3d 191, 204 (E.D.N.Y. 2025). Dismissal on that basis alone is warranted.

Second, the claim fails on the merits. A *prima facie* case of Title VII disparate treatment requires, among other things, that the plaintiff was qualified for the position he held. *See Scé v. City of New York*, No. 20-3954-CV, 2022 WL 598974, at *1 (2d Cir. Mar. 1, 2022) (citing *Williams v. R.H. Donnelley, Corp.*, 368 F.3d 123, 127 (2d Cir. 2004), *abrogated by Muldrow v. City of St. Louis, Missouri*, 601 U.S. 346, 144 S. Ct. 967, 218 L. Ed. 2d 322 (2024)); *Martin v. City Univ. of New York*, No. 17 CIV. 6791 (KPF), 2018 WL 6510805, at *8 (S.D.N.Y. Dec. 11, 2018) (to be qualified, "an employee must not only be capable of performing the work; [he] must also satisfy the employer's conditions of employment.") (citing *Moore v. City of New York*, No. 16-CV-7358(RJS), 2018 WL 1281809, at *4 (S.D.N.Y. Mar. 8, 2018), *aff'd,* 745 F. App'x 407

(2d Cir. 2018)). The Second Circuit has recognized that "[v]accination is a condition of employment in the healthcare field." *We The Patriots USA, Inc.*, 17 F.4th at 294.

District courts in this Circuit have found that where a hospital imposed a COVID-19 vaccination requirement as a condition of employment and an employee failed to comply with that requirement, the employee was not qualified for their position for purposes of bringing a Title VII employment discrimination claim. *See Brown*, 762 F. Supp. 3d at 207; *Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 319 n.15 (E.D.N.Y. 2024); *Lake v. HealthAlliance Hosp. Broadway Campus*, 738 F. Supp. 3d 208, 218 n.13 (N.D.N.Y. 2024); *Tandian v. State Univ. of New York*, 698 F. Supp. 3d 425, 439 (N.D.N.Y. 2023), *appeal dismissed*, No. 23-7984 (2d Cir. May 9, 2024).

As in those cases, here, Defendant established a requirement for all covered employees to receive the COVID-19 vaccine. Def. 56.1 ¶22. Notably, Plaintiff does not dispute that Catholic Health is a covered healthcare entity under Section 2.61 of the Vaccine Mandate. Further, the record establishes that his position fell under the definition of "personnel," *see* Chiechi Dep. Tr. at 45:24 – 46:6, 53:24 – 54:8, 57:10 – 61:22, 62:22 – 65:18 (acknowledging recurring on-site visits to hospital facilities) and that he was accordingly required to be vaccinated as a condition of continued employment. Def. 56.1 ¶ 24; Abrusci Decl. ¶ 9; Marnikarnika Decl. ¶ 13. Accordingly, when Defendant's vaccination requirement went into effect, Chiechi's refusal to comply rendered him unqualified for his position as a Senior Data Protection Administrator at Catholic Health.

2. Title VII and NYSHRL: Failure to Accommodate Claim

Both Title VII and the NYSHRL require employers to accommodate the religious practices of their employees unless doing so would impose an undue hardship on the conduct of the employer's business. *Groff*, 600 U.S. at 453–54; 42 U.S.C. § 2000e(j); N.Y. Exec. Law § 296(10)(a). Undue hardship under Title VII is shown when a burden is "substantial in the overall context of an employer's business." *Groff*, 600 U.S. at 468. Under the NYSHRL, undue hardship defined as "significant interference with the safe or efficient operation of the workplace." N.Y. Exec. Law § 296(10)(d). Courts in this Circuit analyze Title VII and NYSHRL accommodation claims under the same framework. *Algarin v. NYC Health + Hosps. Corp.*, 678 F. Supp. 3d 497, 507 (S.D.N.Y. 2023), *aff'd sub nom. Algarin v. New York City Health & Hosps. Corp.*, No. 23-1063, 2024 WL 1107481 (2d Cir. Mar. 14, 2024) (citing *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 n.7 (2d Cir. 2019)).

To make out a *prima facie* case of failure to accommodate under Title VII, Chiechi must show: (1) a bona fide religious belief conflicting with an employment requirement; (2) the employer was informed of that belief; and (3) he was disciplined for failure to comply with the conflicting requirement. *Baker*, 445 F.3d at 546. Once that showing is made, the burden shifts to the employer to demonstrate it offered a reasonable accommodation or that any accommodation would constitute an undue hardship. *Haczynska v. Mount Sinai Health Sys., Inc.*, 738 F. Supp. 3d 300, 320 (E.D.N.Y. 2024). The NYSHRL places the burden of proving undue hardship squarely on the employer. N.Y. Exec. Law § 296(10)(a); *see also LeBlanc v. United Parcel Serv.*,

No. 11-CV-6983(KPF), 2014 WL 1407706, at *18 (S.D.N.Y. Apr. 11, 2014) (NYSHRL presumes all accommodations reasonable until proven otherwise).

The *prima facie* case is not in dispute. Catholic Health concedes the sincerity of Chiechi's religious beliefs, Pl. 56.1, Additional Undisputed Facts ¶ 3; Chiechi Dep. Tr. at 128:7-10, acknowledges it received notice of those beliefs when he submitted his accommodation request, Def. 56.1 ¶ 32; Chiechi Dep. Tr. at 67:19 – 68:7, and does not dispute that he was terminated for non-compliance. Def. 56.1 ¶ 35. The dispositive question is whether any reasonable accommodation was available without imposing undue hardship on Catholic Health.[1]

*i. Religious Exemption from the Vaccine Mandate was an Undue Hardship.*

Chiechi's primary request was for a religious exemption from the Vaccine Mandate, permitting him to continue his existing duties while unvaccinated. The Mandate covered personnel who "engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents to the disease." N.Y. Comp. Codes R. & Regs. tit. 10, § 2.61(a)(2). While the Mandate authorized medical exemptions, it contained no religious exemption provision. Def. 56.1 ¶ 33 (citing New York State Department of Health, *Frequently Asked Questions Regarding the August 26, 2021 – Prevention of COVID-19*

[1] It is undisputed that the parties did not engage in any interactive process before Catholic Health denied Plaintiff's accommodation request and terminated him. Pl. 56.1, Additional Undisputed Facts ¶1; Chiechi Dep. Tr. at 126:8-14. Given the caselaw discussed herein, such failure to engage does not in and of itself impact the resolution of Chiechi's claims, and the Court need not address these ancillary arguments.

*Transmission by Covered Entities Emergency Regulation* DE[35-3]); *We The Patriots USA, Inc.*, 17 F.4th at 274.

The undisputed facts establish that Chiechi fell within the Mandate's definition of covered personnel. Although his role was non-clinical, he regularly accessed hospital buildings and encountered clinical staff and patients while traveling to and from data rooms. Def. 56.1 ¶¶ 19-20; Marnikarnika Decl. ¶¶ 11-12; Chiechi Dep. Tr. at 45:24 – 46:6, 53:24 – 54:8, 57:10 – 61:22, 62:22 – 65:18.

Defendant argues that the Title VII religious accommodation claim fails because Chiechi's requested accommodation, if granted, would have caused undue hardship by requiring Catholic Health to violate § 2.61, exposing it to fines, revocation of its operating certificate, facility suspension, or closure. Def.'s Mem. at 11-12; *see* N.Y. Pub. Health Law § 229, 2806. Courts in this Circuit have uniformly held that exposure to such regulatory consequences constitutes undue hardship as a matter of law. *We The Patriots USA, Inc.*, 17 F.4th at 370; *D'Cunha v. Northwell Health Sys.*, No. 23-476-CV, 2023 WL 7986441, at *2 (2d Cir. Nov. 17, 2023); *Mace v. Crouse Health Hosp., Inc.*, No. 22-CV-1153(TJM)(ATB), 2023 WL 5049465, at *8 (N.D.N.Y. Aug. 8, 2023) ("Being exposed to legal consequences for violating New York regulations represents a serious burden."); *Haczynska*, 738 F. Supp. 3d at 322. Indeed, courts have "repeatedly rejected discrimination claims that would require employers to violate §2.61 to accommodate a request for religious exemption or accommodation," finding that requiring an employer to violate this state law would pose an undue hardship on the employer. *Addonizio v. Nuvance Health*, No. 23-CV-

1582(LAP), 2024 WL 2958795, at *7 (S.D.N.Y. June 11, 2024) (collecting cases); *see D'Cunha*, 2023 WL 7986441, at *2-3; *Brown*, 762 F. Supp. 3d at 207-08.

*ii. Fully Remote Work was an Undue Hardship*

In the alternative, Plaintiff argues that he could have been accommodated through a fully remote work arrangement, which would have restructured his duties such that he would no longer be covered by the Vaccine Mandate. Pl. Opp. at 3; Am. Compl. ¶¶ 17, 23-25; Pl. 56.1 ¶¶ 14-19; Chiechi Decl. ¶¶ 8-17.

To the extent that Defendants could have accommodated Chiechi's religious belief by placing him in a remote position, courts in this Circuit have found that such an accommodation would result in an undue hardship on hospital defendants, especially in the context of the COVID-19 pandemic. *See, e.g.*, *Conde v. Mid Hudson Reg'l Hosp. Med. Ctr.*, No. 22-CV-3085(VB), 2024 WL 168282, at *8 (S.D.N.Y. Jan. 12, 2024). Moreover, an employer is not required to create a new or fundamentally different position to accommodate an employee's beliefs. *Greene v. Northwell Health Inc.*, No. 2:23-CV-4846(NJC)(LGD), 2024 WL 4287875, at *17 (E.D.N.Y. Sept. 25, 2024); *see also D'Cunha*, 2023 WL 7986441, at *2-3 (citing *We The Patriots USA, Inc.*, 17 F.4th at 292).

The record supports Catholic Health's determination that on-site access to its hospital facilities was an essential function of Chiechi's role. Catholic Health has established that initial hardware diagnosis required on-site presence, Def. 56.1 ¶ 16; Marnikarnika Decl. ¶ 8, that certain critical components were serviced exclusively by in-house staff rather than vendors, Def. 56.1 ¶ 16; Marnikarnika Decl. ¶ 8, and that

time-critical failures required immediate on-site response that could not await vendor dispatch, Def. 56.1 ¶ 17; Marnikarnika Decl. ¶ 9. This is corroborated by Chiechi's own deposition admissions that he visited hospital facilities an average of twelve times per year in the pre-pandemic period, *see* Chiechi Dep. Tr. at 45:24 – 46:6, 53:24 – 54:8, 62:22 – 65:18, and that those visits continued into the pandemic period. *Id.* at 57:10 – 61:22.

Such evidence is sufficient basis to resolve the issue that Chiechi's requested accommodation, if granted, would have caused Catholic Health undue hardship requiring them to (i) violate the law by permitting an unvaccinated covered employee on hospital premises, and (ii) eliminate an essential function of the position. Accordingly. Plaintiff's Title VII and NYSHRL religious accommodation claims fail.

To the extent Chiechi's declaration submitted in opposition contradicts his deposition testimony, the Court rejects it. *See Jeffreys v. City of New York*, 426 F.3d 549, 554-55 (2d Cir. 2005); *Fujitsu Ltd. v. Fed. Exp. Corp.*, 247 F.3d 423, 428 (2d Cir. 2001) (finding that a party may not manufacture a genuine material dispute by submitting a declaration that contradicts prior sworn testimony without explanation). As to the two summarily identified co-workers purportedly granted fully remote work as a reasonable accommodation, there is no record evidence that either employee's position required the same on-site hospital access as Chiechi, much less any facts about the individual duties, or bases for accommodations. Accordingly, without more, the Court will not consider these inapposite "comparators."

## IV. CONCLUSION

For the reasons set forth above, the Court respectfully recommends that Defendant's motion for summary judgment be GRANTED and that Plaintiff's Amended Complaint be dismissed in its entirety. Specifically, the Court recommends that: (1) Plaintiff's Title VII disparate treatment claim be dismissed as abandoned and, independently, on the merits; and (2) Plaintiff's Title VII and NYSHRL failure to accommodate claims be dismissed because any accommodation Chiechi sought would have imposed an undue hardship on Catholic Health, either by requiring it to violate the Vaccine Mandate or by eliminating an essential function of his position.

## V. OBJECTIONS

A copy of this Report and Recommendation is being served on the parties via electronic filing on the date below. Any objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen days. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; Fed. R. Civ. P. 6(a) and 6(d). Failure to file objections within this period waives the right to appeal the District Court's Order. *See Ferrer v. Woliver*, No. 05-3696-PR, 2008 WL 4951035, at *2 (2d Cir. Nov. 20, 2008); *Beverly v. Walker*, 118 F.3d 900, 902 (2d Cir. 1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

Dated: Central Islip, New York
June 3, 2026

/s/ Steven I. Locke

STEVEN I. LOCKE
United States Magistrate Judge